IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMES WOMMACK, | * | |
| Plaintiff, | * | |
| v. | * | |
| | | CIVIL NO. JKB-19-1720 |
| CERES MARINE TERMINALS, INC., | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

James Wommack, who sustained a permanent foot injury in 2014 while working for stevedoring company Ceres Marine Terminals, Inc. ("Ceres"), sued Ceres for wrongful discharge in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 1201, *et seq.* Prior to discovery, the Court denied Ceres's motion to dismiss, or alternatively for summary judgment, as to Wommack's ADA claim. (ECF Nos. 13, 14.) The Court now considers Ceres's second motion for summary judgment, based on new arguments and evidence that Ceres obtained in discovery. (Mot. Summ. J., ECF No. 34.) Ceres's motion is fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, Ceres's second motion for summary judgment (ECF No. 34) will be granted.

### I.   *Background*

In July 2014, longshoreman James Wommack allegedly caught his right foot in a bathroom door, injuring his right ankle and Achilles tendon. (*See* Mot. Summ. J. Mem. Supp. at 7–8, ECF No. 34-1.) Wommack is a member of the International Longshoremen's Association, Local 333 ("Local 333"), a union with which Ceres has signed a collective-bargaining agreement. (*Id.* at 4.) Following Wommack's injury, he received workers' compensation payments through the U.S.

1

Department of Labor ("DOL")'s Office of Workers' Compensation Programs from July 2014 through April 2016. (Mot. Summ. J. Ex. 7, ECF No. 34-8.) During that period, Wommack also underwent surgery on his right Achilles tendon. (*Id.* Ex. 12, ECF No. 34-13.)

In February 2017, Dr. Edward Cohen, a physician conducting an independent medical evaluation, concluded that Wommack was "at maximum medical improvement" and "can be working in a full duty capacity." (Mot. Summ. J. Ex. 13, ECF No. 34-14.) Following Dr. Cohen's medical report, the DOL terminated Wommack's compensation payments. (Mot. Summ. J. Ex. 14, ECF No. 34-15.) In March 2017, however, Wommack again sought workers' compensation, describing his injury as a "fractured foot." (Mot. Summ. J. Ex. 16, ECF No. 34-17.) Wommack does not present evidence illustrating how he allegedly fractured his foot in 2017. Wommack received payments from the STA-ILA Benefits Fund from March 2017 through March 2018. (*Id.*) Following a February 2018 independent medical examination, Dr. Cohen again concluded that Wommack "is capable of working in a full-duty capacity." (Mot. Summ. J. Ex. 17, ECF No. 34-18.)

On March 22, 2018, Wommack completed a driving job for Ceres for the first time since June 10, 2014, but after one day in that role, Wommack strained his Achilles tendon. (Mot. Summ. J. Mem. Supp. at 2; Mot. Summ. J. Exs. 18–19, ECF Nos. 34-19, 34-20.) Several days later, Dr. Cohen examined Wommack and determined that he was "capable of working full time, full duty." (Mot. Summ. J. Ex. 20, ECF No. 34-21.) On May 8, 2018, Wommack's physician, Dr. Stuart Miller, evaluated him and reported that he was "doing light duty" work and "cannot go back to full activity." (Mot. Summ. J. Ex. 21, ECF No. 34-22.) On April 30, 2018, Ceres challenged Wommack's right to compensation before the DOL, stating that Ceres "controverts the extent of

2

disability" and has "suitable alternate employment" available. (Mot. Summ. J. Ex. 22, ECF No. 34-23.)

Earlier in this litigation, the parties' dispute was limited to whether Ceres had terminated Wommack on May 1, 2018. (*See* Opp'n to Mot. Dismiss at 2, ECF No. 10.) As evidence that he was terminated, Wommack presented his June 6, 2018 complaint "seeking clarification regarding his status with Ceres"; minutes from a Local 333 meeting in which a Ceres representative said Wommack was "not employable for Ceres at the present time"; and deposition testimony from William Wade, a Ceres General Manager, that he was told not to employ Wommack, even though Wommack was not terminated locally by Ceres. (*See* Opp'n to Mot. Dismiss at 4; Opp'n to Mot. Summ. J. at 2–3, ECF No. 37.) In response, Ceres argued that it did not terminate Wommack, but rather communicated to Wommack that it was discontinuing his light-duty assignment because he was no longer eligible for workers' compensation. (Reply Mem. Supp. of Mot. Summ. J. at 7, ECF No. 38.)

Wommack applied for a bulldozer operator position with Domino Sugar on May 4, 2018 and began working in that role several weeks later. (ECF No. 10-1 at 23–26.) However, on June 6, 2018, Wommack again applied for health and welfare benefits, claiming that he experienced a "fractured foot and leg" while working for Domino. (Mot. Summ. J. Ex. 28, ECF No. 34-29.) Notably, June 6, 2018 was the same day on which Wommack sought clarification about whether Ceres had indeed terminated his position on May 1, 2018. (*See* ECF No. 10-1 at 10.) Wommack proceeded to receive STA-ILA benefits until mid-January 2019. (*Id.*)

On July 13, 2018, Ceres sent a letter saying that if it receives more information about Wommack's restrictions from Dr. Miller, Ceres "will be happy to see if there is [sic] any jobs

3

[Wommack] can perform the essential duties of . . . with reasonable accommodations." (ECF No. 10-1 at 22.) It appears that Wommack did not respond to Ceres's letter.

While these events were unfolding, both parties were involved in a separate legal dispute concerning Ceres's adherence to its collective-bargaining agreement with Local 333. In short, Wommack and several others filed a complaint with the U.S. National Labor Relations Board ("NLRB"), arguing that Ceres violated the National Labor Relations Act by not applying portions of its collective-bargaining agreement with Local 333 to injured employees who are receiving workers' compensation payments. (*See* ECF No. 10-1 at 45.) In April 2018, the NLRB dismissed this complaint, determining that light-duty employees—like Wommack—do not fall within the purview of the collective-bargaining agreement. (Mot. Summ. J. Ex. 23, ECF 34-24.)

## II.  *Legal Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The "mere existence of a scintilla of evidence in support of the [nonmoving party's] position" is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The facts themselves, and the inferences to be drawn therefrom, must be viewed in the light most favorable to the party opposing summary judgment. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). Even so, the opponent may not rest upon the mere allegations or denials of his pleading, but must instead, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits must be made on personal knowledge

with such facts as would be admissible in evidence and must affirmatively show the competence of the affiant to testify to the matters stated therein. Fed. R. Civ. P. 56(c)(4).

### *III. Analysis*

In order to make a *prima facie* case of wrongful discharge under the ADA, a plaintiff must show that "(1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001). "Evidence of all four of these elements is necessary to survive summary judgment." *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012) (affirming a grant of summary judgment to an employer when the plaintiff employee claimed he was disabled, but failed to provide sufficient evidence that he had a disability under the ADA's definitions).

When this Court considered Ceres's first motion for summary judgment, the parties disputed only whether element (2) of the above claim was met. Both Wommack and Ceres presented evidence and arguments regarding whether Wommack was terminated on May 1, 2018. In its second motion for summary judgment, Ceres expands the scope of its challenge, urging the Court to enter summary judgment in its favor because Wommack has not presented sufficient evidence of elements (1), (3), and (4) in the above test. (Reply Mem. Supp. of Mot. Summ. J. at 2.) In response, Wommack inexplicably asserts that the "only element of Wommack's ADA claim that appears to be challenged by the defendant is that Wommack was discharged." (Opp'n to Mot. Summ. J.)[1]

---

[1] As Ceres notes, Wommack was late in filing his response to Ceres's motion for summary judgment. (Reply Mem. Supp. of Mot. Summ. J. at 1.) The Court will not address this issue because Wommack's late response—and his failure to explain the reason for this lateness—do not alter the Court's decision to grant summary judgment. *See Marbly v. Home Props. of N.Y.*, 183 F. Supp. 2d 950, 954 (E.D. Mich. 2002) (holding that the court had discretion to

5

A plaintiff satisfies element (1) when he or she "is a qualified individual with a disability." *Haulbrook*, 252 F.3d at 702 (quoting 42 U.S.C. §§ 12102(2), 12112). Under the ADA, a "qualified individual" is one who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12102(1). The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual." *Id.* § 12111(8). An individual is also considered to have a "disability" under the ADA if he or she is "regarded as having such an impairment." *Id.* § 12102(3).

In his response to Ceres's motion, Wommack does not attempt to prove that he was a "qualified individual" under the ADA's definition. Wommack asserts that he could perform the essential functions of his position with reasonable accommodations, and counters Dr. Cohen's assessment that he could return to full-duty work with Dr. Miller's recommendation that he remain in a light-duty position. (*See* Opp'n to Mot. Dismiss at 2, 5.) Wommack, however, neither alleges nor provides evidence that, at the time of his alleged termination, his foot injury "substantially limit[ed]" a "major life activit[y]." *See Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 332 (4th Cir. 2014) (emphasis added) ("Prohibiting employers from discriminating against temporarily disabled employees will burden employers *only as long as the disability endures*."). And Wommack does not present any evidence that Ceres "regarded" him as being disabled. On the contrary, Ceres, citing Dr. Cohen's 2017 medical examination, argues that Wommack was not a "qualified individual" under the ADA. (Mot. Summ. J. Mem. Supp. at 2.) Ceres's April 2018 letter controverting Wommack's entitlement to workers' compensation further illustrates that Ceres did not regard him as a disabled individual.

---

consider a defendant's untimely response to a motion for summary judgment when the plaintiff "failed to articulate how his position was prejudiced by the . . . delay").

Similarly, Wommack does not present sufficient evidence of elements (3) and (4) of his ADA claim. With respect to element (3), Wommack neither alleges nor presents evidence that he was performing his job consistent with Ceres's legitimate expectations on May 1, 2018. Ceres's letter to the DOL controverting Wommack's claim for benefits, and its later letter offering to find Wommack a position that was consistent with Dr. Miller's recommended restrictions, both suggest that Wommack was not meeting Ceres's expectations regarding his job performance as of May 1, 2018. Wommack does not offer evidence pointing to a contrary conclusion.

As for element (4), the Fourth Circuit requires an employee facing summary judgment to first establish a "prima facie case" of discrimination, which can involve "proving a set of facts which would enable the fact-finder to conclude, in the absence of any further explanation, that it is more likely than not that the adverse employment action was the product of discrimination." *Ennis v. Nat'l Ass'n of Bus. and Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995) (affirming summary judgment because when an employee "cannot point to any circumstance surrounding her discharge that credibly raises an inference of unlawful discrimination, she failed to make an adequate showing on an essential element of her case"). Wommack does not offer evidence that Ceres terminated him due to a discriminatory motive. At an earlier stage of this litigation, Wommack speculated that Ceres might have terminated him to avoid paying him a higher disability award in the parties' ongoing NLRB dispute over workers' compensation, (Opp'n to Mot. Dismiss at 5–6), but Wommack does not provide evidence that Ceres had such a discriminatory motive. On the contrary, the NLRB dismissed that other complaint, and Wommack provides evidence suggesting that Ceres sought to *retain* Wommack as an employee. Both parties cite Ceres's July 2018 letter—which was, notably, issued two months after Wommack claims he

7

was terminated—offering to find a position whose essential functions Wommack could perform. (*See* ECF No. 10-1 at 22.)

Returning to element (2) of Wommack's ADA claim, the parties dispute whether Wommack was indeed discharged from Ceres on May 1, 2018, and this Court has already concluded that both parties presented sufficient evidence to create a genuine factual dispute on this question. (*See* ECF No. 13.) The Court will not revisit this question because Wommack has not presented sufficient evidence regarding the other three elements of his ADA discrimination claim. This means that Wommack has not established a genuine issue of material fact, and thus cannot survive summary judgment. *See Celotex Corp.*, 477 U.S. at 317 (emphasis added) (A "complete failure of proof concerning an essential element of the nonmoving party's case *necessarily renders all other facts immaterial*.").

In sum, Wommack failed to meet his burden to produce evidence demonstrating a genuine issue of material fact with respect to each of the four necessary elements of his ADA claim.

### IV. Conclusion

For the foregoing reasons, an order shall enter granting Defendant's motion for summary judgment (ECF No. 34).

DATED this 30 day of October, 2020.

BY THE COURT:

*/s/ James K. Bredar*
James K. Bredar
Chief Judge

8